UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

SEP 1 4 2012

CLERK, U.S. DISTRICT COURT
RICHMOND, VA

UNITED STATES OF AMERICA, Plaintiff,  )
  )
v.  )   No. 3:12-cv-00397-REP
  )
SUNTRUST MORTGAGE, INC., Defendant.  )
—————————————————————  )

## CONSENT ORDER

### I. INTRODUCTION

This Consent Order (Order) is submitted jointly by the parties for the approval of and entry by the Court to resolve the claims of the United States that, during and between 2005 and 2009, the Defendant engaged in a pattern or practice of conduct in violation of the Equal Credit Opportunity Act (ECOA), 15 U.S.C. §§ 1691-1691f, and the Fair Housing Act (FHA), 42 U.S.C. §§ 3601-3619, by discriminating on the basis of race and national origin in the extension of residential credit and in the making of residential real estate-related transactions.

There has been no factual finding or adjudication with respect to any matter alleged by the United States. The parties have entered into the Order to avoid the risks, expense, and burdens of litigation and to resolve voluntarily the claims in the United States' Complaint of the Defendant's alleged violations of federal fair lending laws.

### II. BACKGROUND

SunTrust Mortgage has been one of the nation's largest mortgage lenders since SunTrust Bank's 1998 acquisition of Richmond-based Crestar Bank and Crestar Mortgage Corporation. From 2005-2009, SunTrust Mortgage annually originated between 120,000 and 200,000 mortgage loans with an annual principal value of more than $30 billion through its retail and



RECEIVED

JUL 1 1 2012

CLERK, U.S. DISTRICT COURT
RICHMOND, VA

wholesale channels.  Throughout that period, SunTrust Mortgage offered nearly every type of mortgage loan product available in the market, and it generally concentrated on conforming prime loans.

In 2007, Federal Reserve System examiners initiated a fair lending review of SunTrust Mortgage's mortgage pricing practices.  As a result of that review, the Federal Reserve Board ("FRB") determined that it had "reason to believe that SunTrust Mortgage Incorporated engaged in a pattern or practice of mortgage pricing discrimination based on race, color and national origin in violation of Section 701(a) of the Equal Credit Opportunity Act and the Fair Housing Act" for loans made during 2005 and 2006.  Following that determination, and pursuant to 15 U.S.C. § 1691e(g), the FRB referred the matter to the Department of Justice on December 3, 2009.

In its Complaint, the United States alleges that between 2005 and 2009, SunTrust Mortgage engaged in a pattern or practice of discrimination on the basis of race and national origin in violation of both the FHA and the ECOA based on the interest rates, fees, and costs paid by African-American and Hispanic borrowers who received loans from its retail and wholesale lending channels.

Defendant denies all the allegations and claims of a pattern or practice of discrimination in violation of the FHA and the ECOA as set forth in the United States' Complaint.  Defendant asserts that at all times it conducted its lending in compliance with the letter and spirit of the fair lending laws and in a non-discriminatory manner.  Defendant maintains that any differences in pricing were attributable to legitimate, non-discriminatory factors.  Notwithstanding its disagreement with the allegations of the United States, Defendant has agreed to the entry of this

order to resolve voluntarily the claims asserted by the United States in order to avoid the costs, risks, and burdens of litigation.

In 2009, Defendant implemented policies and monitoring that substantially lessened loan pricing disparities on the basis of race or national origin in Defendant's retail lending channel. Under the provisions of the Order, the Defendant agrees to maintain policies and procedures designed to ensure that the price charged for its residential loan products, including the portion of the price that reflects the discretion of the loan officer or mortgage broker, is set in a nondiscriminatory manner consistent with the requirements of the FHA and the ECOA. In addition, the Defendant will compensate certain Hispanic and African-American borrowers as provided herein.

## III. INJUNCTIVE RELIEF

### A.    Lending Policies and Procedures

1.    The Defendant shall maintain specific standards, substantially similar to those detailed in SunTrust Mortgage's "Fair and Responsible Banking Policy Implementation Guidelines" effective June 1, 2012 ("the June 2012 Guidelines"), as provided to the United States on May 9, 2012, under the heading "Pricing and Compensation Practices: Retail and Consumer Direct Channels," to limit disparities, based on a borrower's race or national origin, for the assessment of all origination fees and costs it charges and retains for itself or pays to its employees on loans secured by residential real estate.[1]  For the duration of the Order, the Defendant shall continue to maintain its policy implemented on April 1, 2010 of prohibiting

---

[1]  No term of the Consent Order will be interpreted to prevent the Defendant from complying with any federal statutory or regulatory requirement concerning employee or mortgage broker compensation or loan pricing.

overages[2] in its retail channel.  The Defendant shall also maintain its policy of prohibiting

subsidies exceeding 100 basis points (subject to the exceptions provided in the June 2012

Guidelines), and requiring employees to document the reason for any subsidy.  Before funding

any loan, the Defendant shall ensure it maintains documentation of compliance with the

standards established to satisfy this Paragraph.

     2.    The Defendant shall maintain specific standards, substantially similar to those

detailed in its the June 2012 Guidelines under the heading "Pricing and Compensation Practices:

Broker Channel," to limit disparities, based on a borrower's race or national origin, for the total

broker compensation paid to mortgage brokers[3] on loans secured by residential real estate that

are originated in the Defendant's name and that the Defendant underwrites, originates, or funds.

For the duration of the Order, the Defendant shall continue to maintain its policy implemented in

November 2009 of limiting total broker compensation to the higher of 3.5% of the loan amount

or $3,000.  The Defendant shall also maintain its policy that lender-paid compensation to brokers

(including payments by the Defendant to a broker made out of loan proceeds) is an agreed-upon

amount per loan that does not vary by loan and can only be changed on a quarterly basis.  The

Defendant shall ensure compliance with these standards is a part of any agreement that provides

for a mortgage broker to submit loan applications to the Defendant.  To the extent the standards

established to satisfy this Paragraph allow mortgage brokers to exercise discretion in the amount

of the total broker compensation, mortgage brokers will provide a written explanation for

borrower-paid total broker compensation that exceeds 2.5% of the loan amount.  Before funding

---

[2] The terms "overage," "subsidy," and "total broker compensation" in the Order follow the
definition contained in the June 2012 Guidelines.

[3] The term "mortgage broker" in the Order follows the definition contained in 12 C.F.R.
§ 1026.36(a), and includes both natural persons and organizations.

any loan, the Defendant shall ensure it maintains documentation of compliance with the standards established to satisfy this Paragraph.

3.     The Defendant shall require, for all loans secured by residential real estate originated in its name, all employees and mortgage brokers to comply with the requirements established in Paragraphs 1-2. The Defendant shall also require an appropriate manager, under the supervision of a designated senior official of the Defendant, to review compliance with these requirements and to ensure that discretionary loan prices do not vary materially by race or national origin without a legitimate nondiscriminatory explanation for such variation. In the event that Defendant receives or pays compensation in excess of what is permitted by the policies referenced in Paragraphs 1-2, an appropriate refund will be provided to the borrower in the form of a cash payment or credit to the borrower's account. All reviews shall be documented, and such documentation shall be retained for the term of the Order.

**B.     Monitoring Program**

4.     The Defendant for the duration of the Order shall maintain no less than its currently existing level of fair lending auditing and monitoring detailed in SunTrust Mortgage's "Fair and Responsible Banking: Mortgage Pricing Regression Analysis (Retail)" and "Fair and Responsible Banking" Mortgage Pricing Regression Analysis (Broker)" procedure documents last reviewed on May 1, 2012 ("the May 2012 Procedures"), as provided to the United States on May 11 and 14, 2012.

5.     Within 30 days of the Effective Date of the Order, the Defendant shall have in place a monitoring program designed to ensure compliance with the Order. The program shall be designed to monitor, for all loans secured by residential real estate originated in its name, for potential unexplained disparities by a borrower's race or national origin in the price charged for its residential loan products. At a minimum, the Defendant shall monitor APRs, overages,

subsidies, and total broker compensation. The monitoring shall include, but not be limited to, an analysis designed to detect statistically significant unexplained disparities in the price charged for its residential loan products by race and national origin, with respect to all loans secured by residential real estate originated in the Defendant's name. Such analysis will be conducted at the national level and at a metropolitan statistical area (MSA) level for MSAs where the Defendant annually originates at least 100 loans, including at least 30 loans to non-Hispanic whites and 30 loans to either African-Americans or Hispanics.

6.  The Defendant's senior managers shall conduct a quarterly review of the monitoring program. A report on the review shall be presented to the appropriate committee of the Defendant's Board of Directors for approval not later than 75 days after the end of each quarter.

a.  In the event that any such review discloses statistically significant at the 95% level disparities at the national level or in any MSA, the Defendant shall attempt to determine the reason(s) for those disparities and shall promptly take corrective action to address significant disparities that were caused by a policy or practice of the Defendant, and not justified by legitimate business need. Corrective action shall include, as warranted, financial remediation for borrowers, modifications to the Defendant's pricing policies and/or monitoring programs as appropriate, and education, discipline or termination of employee(s) or mortgage broker relationship(s). The Defendant shall document all such disparities, determinations, and actions taken and shall provide a

summary of the quarterly reviews and any documentation and analysis relating thereto to the United States on a semi-annual basis.[4]

b.    In the event that any such review discloses statistically significant disparities with respect to any particular employee, branch office, or mortgage broker, the Defendant shall require the employee, branch manager, or mortgage broker to explain the non-discriminatory reason(s) for those disparities. If there is no reasonable, non-discriminatory explanation for the noted disparities, the Defendant shall require the employee or branch manager to take prompt corrective action to address the disparities, and the Defendant shall take prompt appropriate action with respect to mortgage brokers, up to and including termination of the broker relationship.

If the United States raises any objections to the Defendant's determinations or remedial actions pursuant to this paragraph, the Defendant and the United States shall meet and confer to consider appropriate steps to address the concerns raised by the United States' review. If the parties are unable to come to an agreement regarding such objections, any party may bring the dispute to the Court for resolution. To resolve the dispute, the Court shall review whether the Defendant has followed "Step 1," "Step 2," and "Step 3" of the May 2012 Procedures, and, if the

---

[4] All material required by the Order to be sent to the United States shall be sent by commercial overnight delivery service addressed as follows: Chief, Housing and Civil Enforcement Section, Civil Rights Division, U.S. Department of Justice, 1800 G Street NW, Suite 7002, Washington, DC 20006, Attn: DJ 188-79-19, or by facsimile to 202-514-1116. The Defendant may redact portions based on an assertion of attorney work product or attorney-client privilege from any materials required by the Order to be sent to the United States or to be subject to review by the United States, or, upon notice to the United States, it may withhold materials based on an assertion of attorney-client privilege applying to an entire document. If the United States raises any objections to the Defendant's claim of privilege, the Defendant and the United States shall meet and confer to resolve the dispute. If the parties are unable to come to a resolution, the United States may ask the Court to determine whether the material is protected from disclosure by attorney work product or attorney-client privilege recognized under any applicable federal or state law.

Court determines that the Defendant has not done so, require the Defendant to comply with each step that it did not follow.

7.     During the duration of the Order, the Defendant shall maintain a complaint resolution program to address consumer complaints alleging discrimination regarding pricing of loans secured by residential real estate originated in the Defendant's name. The Defendant may satisfy this requirement through a program administered by its own employees. This program will not review complaints concerning the Settlement Fund provided by Paragraphs 12-24. Documentation regarding such complaint resolution program, including documentation of individual complaints and resolutions, if any, shall be made available to the United States through the semi-annual reports referenced in Paragraph 27. There is no requirement under the Order that any complaint necessarily be resolved for or against the Defendant or that any particular form or amount of relief be provided to any complainant, and the Parties shall not bring disputes concerning the resolution of individual complaints to the Court.

**C.     Equal Credit Opportunity Training Program**

8.     Within 90 days of the Effective Date of the Order, the Defendant shall provide access to a copy of the Order and the policies referenced therein to its management officials and employees who participate in taking applications for, originating, or pricing loans secured by residential real estate, including employees who have significant contact with or oversight of mortgage brokers. The Defendant shall provide access to a copy of the Order and the policies referenced therein to each new management official or employee whose responsibilities include those set forth in the preceding sentence within 30 days of beginning his or her employment in that position.

9.      Within 150 days of the Effective Date of the Order, and annually thereafter for the duration of the Order, the Defendant shall provide equal credit opportunity training to its management officials and employees who participate in taking applications for, originating, or pricing loans secured by residential real estate, including employees who have significant contact with or oversight of mortgage brokers. The Defendant shall provide equal credit opportunity training to each new management official or employee whose responsibilities include those set forth in the preceding sentence within 90 days of beginning his or her employment in that position.

10.     During the equal credit opportunity training, the Defendant shall provide to each participant training on the terms of the Order, the policies referenced therein, the requirements of the FHA, the ECOA, and his or her responsibilities under each. The content of the training program required by this Paragraph shall be approved in advance by the United States. Any expenses associated with this training program shall be borne by the Defendant. At the conclusion of the training program, the Defendant will require each employee to successfully complete an assessment which demonstrates that the employee was provided access to a copy of the Order and the policies referenced therein, understands his or her legal responsibility not to discriminate, and has completed the equal credit opportunity training.

11.     The Defendant shall offer all mortgage brokers who submit applications to the Defendant for loans secured by residential real estate the opportunity to undergo fair lending training similar to the training described in Paragraph 10. The Defendant shall retain for the duration of the Order documentation of any training conducted or requests for training made pursuant to this Paragraph, and make such documentation available to the United States upon request.

## IV. SETTLEMENT FUND

12.     The Defendant shall deposit in an interest-bearing escrow account the total sum of $21 million to compensate for alleged monetary damages suffered as a result of the alleged violations of the FHA and the ECOA (the "Settlement Fund"). The Defendant shall provide written verification of the deposit to the United States within 5 days of the Effective Date of the Order. Any interest that accrues shall become part of the Settlement Fund and be utilized and disposed of as set forth herein.

13.     The United States provided to the Defendant a list of 28,984 loans originated to African-American and Hispanic borrowers affected by the discrimination alleged in the Complaint, and the amount of loan fees and costs at issue for each listed loan. No individual may request the Court review the identification of loans. The Defendant will provide the name, property address, mailing address, and Social Security number for each borrower on each listed loan. Such information and data shall be used by the United States only for the law enforcement purposes of implementing this Order. Within 90 days of the Effective Date of the Order, the Defendant shall supply, to the extent that it is within the control of the Defendant, the Defendant's parent, or any entity owned by the Defendant's parent, the requested data. To the extent that the requested data is not within the control of those parties, the Defendant shall, within 90 days of the Effective Date of the Order, supply any data in the control of those parties that identifies other parties that may have that the information. The United States shall, within 10 days of providing notice, be allowed access to mortgage loan files and borrower contact information contained in servicing records of the Defendant, the Defendant's parent, or any entity owned by the Defendant's parent for loans the Defendant originated between 2005 and 2009 to verify the accuracy of the data provided and to otherwise assist in locating borrowers who will receive payments from the Settlement Fund.

-10-

14. Rust Consulting Inc. shall serve as Settlement Administrator ("Administrator") to conduct the activities set forth in Paragraphs 15-20. The Defendant shall bear all costs and expenses of the Administrator, and the Defendant's contract with the Administrator shall require the Administrator to comply fully with the provisions of the Order as applicable to the Administrator.[5] The Administrator's contract shall require the Administrator to work cooperatively with the United States in the conduct of its activities, including providing reports at least monthly to the United States detailing its activities since its last report. The Defendant shall allow the Administrator access to mortgage loan files and borrower contact information contained in servicing records of the Defendant, the Defendant's parent, or any entity owned by the Defendant's parent for loans the Defendant originated between 2005 and 2009 for the purposes of accomplishing its duties under the Order. The Administrator's contract shall require the Administrator to comply with all confidentiality and privacy restrictions applicable to the party who supplied the information and data to the Administrator. Consistent with Paragraphs 15 and 17, the Administrator will neither determine who is an allegedly aggrieved person nor determine the amount of damage to be received by any allegedly aggrieved person.

---

[5] Defendant shall provide the United States an opportunity (1) to review a draft of the contract it proposes to enter into with the Administrator and (2) to request changes to the contract sufficient to ensure that the contract requires the Administrator's full compliance with the provisions of the Order as applicable to the Administrator. In the event the United States has reason to believe that the contract does not so provide, or that the Administrator is not materially complying with the terms of its contract with the Defendant, the United States and the Defendant shall meet and confer for the purpose of mutually agreeing upon a modified contract or a course of action to effect the Administrator's material compliance with its contract with the Defendant. In the event that the United States and the Defendant are unable to agree upon the terms of a contract or a course of action to effect the Administrator's material compliance with its contract with the Defendant, the parties may present the matter to the Court. The Court shall determine whether the contract is sufficient to require the Administrator's full compliance with the provisions of the Order as applicable to the Administrator, or that the Administrator is materially complying with the terms of its contract with the Defendant, and it shall direct the Defendant to remedy promptly any deficiencies it finds.

15.     Within 90 days of receipt of all the data required to be provided by Paragraph 13, the United States shall provide the Defendant and the Administrator with the amount the borrowers (hereinafter "allegedly aggrieved persons") will receive from the Settlement Fund for each of the 28,984 loans affected by the discrimination alleged in the Complaint and included on the list provided to the Defendant pursuant to Paragraph 13, if all allegedly aggrieved persons choose to participate. The United States shall base these amounts on the loan fees and costs provided to the Defendant pursuant to Paragraph 13. No individual may request the Court or the Administrator review the identification of allegedly aggrieved persons or the amount to be received. The Order does not affect the legal rights of any individual not included on the list of allegedly aggrieved persons.

16.     The Administrator's contract shall require the Administrator to adopt methods regularly used by companies that administer litigation and government enforcement settlement funds to locate each identified allegedly aggrieved person, to inform each identified allegedly aggrieved person of his or her right to receive a payment from the Settlement Fund no smaller than the amount calculated by the United States pursuant to Paragraph 15, and to confirm his or her identity and willingness to release his or her individual discrimination claims in order to receive a payment form the Settlement Fund. The Administrator's contract shall require the Administrator to complete this responsibility within a period of 6 months from the date the United States provides the list described in Paragraph 15, subject to an extension of time as provided by Paragraphs 21 and 30. The Administrator's contract shall require the Administrator, as part of its operation, to establish cost-free means for allegedly aggrieved persons to contact it, such as email and a toll-free telephone number.

17.    For each allegedly aggrieved person who confirms his or her identity and willingness to release individual discrimination claims pursuant to Paragraph 16, the United States shall specify the final amount each such person shall receive from the Settlement Fund no later than 120 days after the Administrator's deadline for locating aggrieved persons in Paragraph 16 has passed. The United States shall adjust these final payment amounts from the payment amounts calculated pursuant to Paragraph 15 to distribute funds originally allocated to allegedly aggrieved persons who did not confirm, pursuant to Paragraph 16, their identity and willingness to release individual discrimination claims. The United States shall provide the final compensation list to the Administrator. No individual may request a review by the Court or the Administrator of the final payment amounts. The parties agree that the total amount of the Settlement Fund shall not be altered based on the number of allegedly aggrieved persons who confirm their identity and willingness to release individual discrimination claims pursuant to Paragraph 16.

18.    The Administrator's contract shall require the Administrator to send releases, including the language set forth in Appendix A, to allegedly aggrieved persons (hereafter, "Releases"). Each Release shall list the final payment amount the United States has allocated to the allegedly aggrieved individual from the Settlement Fund, as provided by Paragraph 17. Any allegedly aggrieved person may decline all benefits from the Order, including a payment from the Settlement Fund, by not returning the Release. The Order does not affect the legal rights of any allegedly aggrieved person who does not return the Release. The parties agree that the amount of the Settlement Fund shall not be altered based on the number of allegedly aggrieved persons who return a Release.

19.     After receipt of executed releases, the Administrator's contract shall require the Administrator promptly to deliver payments to those persons in amounts determined by the United States as described in Paragraph 17.

20.     The Administrator's contract shall require the Administrator to set forth deadlines, subject to approval of the United States, so that the compensation is distributed and checks are presented for payment or become void prior to the date that is 24 months from the date the Administrator begins to locate allegedly aggrieved persons pursuant to Paragraph 16.

21.     Payments from the Settlement Fund to allegedly aggrieved persons shall be subject to the following conditions, provided that the details in administration of the Settlement Fund set forth in Paragraphs 13-20, can be modified by agreement of the parties and without further Court approval:

(a)     No allegedly aggrieved person shall be paid any amount from the Settlement Fund until he or she has executed and delivered to the Defendant a Release, including the language set forth in Appendix A; and

(b)     The total amount paid by the Defendant collectively to the allegedly aggrieved persons shall not exceed the amount of the Settlement Fund, including accrued interest.

22.     All money not distributed to allegedly aggrieved persons from the Settlement Fund, including accrued interest, within 24 months from the date the Administrator begins to locate allegedly aggrieved persons pursuant to Paragraph 16 shall be distributed to at least two organizations that provide services including credit and housing counseling (including assistance in obtaining loan modification and preventing foreclosure), legal representation of borrowers seeking to obtain a loan modification or to prevent foreclosure, financial literacy, and other related programs targeted at African-American and Hispanic potential and former homeowners

in communities where the Complaint alleges significant discrimination occurred against African-American and Hispanic borrowers. The Defendant shall identify the organizations to receive such funds, and it shall propose to the United States the amount of funds each organization shall receive. Recipients of such funds must not be related to the Defendant, the Defendant's parent, or any entity owned by the Defendant's parent. The Defendant will consult with and obtain the non-objection of the United States in selecting recipients of these funds and the amount to be distributed to each.

23.     The parties shall obtain the Court's approval for the organizations to receive funds and the amount to be distributed to each prior to distribution provided by Paragraph 22. The parties shall provide the Court with information regarding how the proposed organizations meet the requirements set forth in Paragraph 22. The Defendant shall require each recipient to submit to the Court, the Defendant, and the United States a report detailing that funds are utilized for the purposes indentified in Paragraph 22 within one year after the funds are distributed. For any recipient that does not provide such a report, the Defendant shall require that the funds be returned to it for redistribution to the other organization(s) approved to receive funds.

24.     The Defendant shall not be entitled a set-off, or any other reduction, of the amount of payments to aggrieved persons because of any debts owed by the identified persons. The Defendant also shall not refuse to make a payment based on a release of legal claims or loan modification previously signed by any aggrieved persons.

## V. EVALUATING AND MONITORING COMPLIANCE

25.     For the duration of the Order, the Defendant shall retain all records relating to its obligations hereunder as well as its compliance activities as set forth herein. The United States shall have the right to review and copy such records upon request, including loan files and electronic data for loans secured by residential real estate made during the duration of the Order.

-15-

26.     The Defendant shall provide to the United States the data on its lending that is submitted to the Federal Financial Institutions Examination Council (FFIEC) pursuant to the Home Mortgage Disclosure Act and the Community Reinvestment Act. The data will be provided in the same format in which it is presented to the FFIEC, within 30 days of its submission to the FFIEC each year, for the duration of the Order, including the record layout.

27.     In addition to the submission of any other plans or reports specified in the Order, the Defendant shall submit semi-annual reports to the United States on its progress in completing the requirements of the Order. Each such report shall provide a complete account of the Defendant's actions to comply with each requirement of the Order during the previous 6 months, an objective assessment of the extent to which each quantifiable obligation was met, an explanation of why any particular component fell short of meeting its goal for the previous 6 months, and any recommendations for additional actions to achieve the goals of the Order. Each such report shall detail any changes made to the June 2012 Guidelines or the May 2012 Procedures during the previous 6 months. The Defendant shall submit its first report no later than 180 days after the Effective Date of the Order, and every 180 days thereafter for so long as the Order is in effect. In addition, if applicable, the Defendant shall attach to the semi-annual reports representative copies of training materials disseminated pursuant to the Order.

## VI. <u>ADMINISTRATION</u>

28.     Unless otherwise stated herein, the remedial provisions of the Order shall be implemented within thirty (30) days of the Effective Date of the Order and shall continue throughout its term. The Effective Date of the Order shall be the date on which it is approved and entered by the Court.

-16-

29.     The Order shall terminate 3 months after the submission of the Defendant's sixth semi-annual report due under Paragraph 27 to the United States, except that if all the actions required by Paragraphs 12 through 24 have not been completed, Paragraphs 12 to 24 and this section will continue in effect for an additional six months. Notwithstanding the above, the Order may be extended further upon motion of the United States to the Court, for good cause shown.

30.     Any time limits for performance fixed by the Order may be extended by mutual written agreement of the parties. Except as provided by Paragraph 21, other modifications to the Order may be made only upon approval of the Court, upon motion by either party. The parties recognize that there may be changes in relevant and material factual circumstances during the duration of the Order which may impact the accomplishment of its goals. The parties agree to work cooperatively to discuss and attempt to agree upon any proposed modifications to the Order resulting therefrom.

31.     The Order shall be binding on the Defendant, including all its officers, employees, agents, assignees, and successors in interest, and all those in active concert or participation with any of them. The Order shall consider loans originated by a joint venture operated by the Defendant, which are also funded by the Defendant, to be loans originated by employees of the Defendant. In the event the Defendant seeks to transfer or assign all or part of its operations, and the successor or assign intends on carrying on the same or similar use, as a condition of sale, the Defendant shall obtain the written accession of the successor or assign to any obligations remaining under the Order for its remaining term.

32.     Nothing in the Order shall excuse the Defendant's compliance with any currently or subsequently effective provision of law or order of a regulator with authority over the Defendant that imposes additional obligations on the Defendant.

33.     The parties agree that, as of the date of entry of the Order, litigation is not "reasonably foreseeable" concerning the matters described in the Order.  To the extent that either party previously implemented a litigation hold to preserve documents, electronically stored information, or things related to the matters described in the Order, the party is no longer required to maintain such a litigation hold.

34.     In the event that any disputes arise about the interpretation of or compliance with the terms of the Order, the parties shall endeavor in good faith to resolve any such dispute between themselves before bringing it to the Court for resolution.  If the United States believes that the Defendant has violated any provision of the Order, it will provide the Defendant written notice thereof and allow 30 days to resolve the alleged violation before presenting the matter to the Court.  In the event of either a failure by the Defendant to perform in a timely manner any act required by the Order or an act by the Defendant in violation of any provision hereof, the United States may move the Court to impose any remedy authorized by law or equity.

35.     The Defendant's compliance with the terms of the Order shall fully and finally resolve all claims by the United States of discrimination, including under the FHA and ECOA, that are raised in the Complaint's allegations of a pattern or practice, in loans originated between January 1, 2005 and December 31, 2009 by the Defendant, of discrimination against African-American and Hispanic borrowers based on racial and national origin disparities in loan prices, including all claims for equitable relief and monetary damages and penalties arising from those claims, as well as any claims under any other legal theory based on the same allegations of

discriminatory conduct addressed in the Complaint. The Order does not release claims for practices not addressed in the Complaint's allegations, including claims that may be held or are currently under investigation by any federal agency. The Order does not release any claims not related to discrimination under any statute.

36.    Each party to the Order shall bear its own costs and attorneys' fees associated with this litigation.

37.    The Order is enforceable only by the parties. No person or entity is intended to be a third party beneficiary of the provisions of the Order for purposes of any civil, criminal, or administrative action, and accordingly, no person or entity may assert a claim or right as a beneficiary or protected class under the Order.

38.    The Court shall retain jurisdiction for the duration of the Order to enforce the terms of the Order, after which time the case shall be dismissed with prejudice. Pursuant to the provisions of Paragraphs 13, 15, 17, and 37, the Court will not resolve disputes over the identification of allegedly aggrieved persons or the amount of compensation allocated to each such person.

SO ORDERED, this 14ᵗʰ day of September, 2012.

/s/ REP
UNITED STATES DISTRICT JUDGE
ROBERT E. PAYNE

The undersigned hereby apply for and consent to the entry of the Order:

**For Plaintiff United States of America:**

NEIL H. MACBRIDE
United States Attorney

THOMAS E. PEREZ
Assistant Attorney General
Civil Rights Division
STEVEN H. ROSENBAUM
Chief
Civil Rights Division
Housing and Civil Enforcement Section
JON M. SEWARD
Deputy Chief
Civil Rights Division
Housing and Civil Enforcement Section

ROBERT P. MCINTOSH
Virginia Bar Number 66113
Assistant United States Attorney
600 E. Main Street, Suite 1800
Richmond, Virginia 23219
Email: Robert.McIntosh@usdoj.gov
Phone: 804-819-5400
Fax: 804-819-7417

DANIEL P. MOSTELLER
Trial Attorney
United States Department of Justice
Civil Rights Division
Housing and Civil Enforcement Section
950 Pennsylvania Ave., N.W. – NWB
Washington, D.C. 20530
Email: Daniel.Mosteller@usdoj.gov
Phone: 202-514-4713
Fax: 202-514-1116

**For Defendant SunTrust Mortgage, Inc.:**

ANDREW L. SANDLER
KIRK D. JENSEN
LIANA R. PRIETO

CAITLIN M. KASMAR
Virginia Bar Number 68298
BuckleySandler LLP
1250 24th Street NW, Suite 700
Washington, DC 20037
Email: Andrew.Sandler@buckleysandler.com
Phone: 202-349-8000
Fax: 202-349-8080

The undersigned hereby apply for and consent to the entry of the Order:

**For Plaintiff United States of America:**

NEIL H. MACBRIDE
United States Attorney

THOMAS E. PEREZ
Assistant Attorney General
Civil Rights Division
STEVEN H. ROSENBAUM
Chief
Civil Rights Division
Housing and Civil Enforcement Section
JON M. SEWARD
Deputy Chief
Civil Rights Division
Housing and Civil Enforcement Section

_____
ROBERT P. MCINTOSH
Virginia Bar Number 66113
Assistant United States Attorney
600 E. Main Street, Suite 1800
Richmond, Virginia 23219
Email: Robert.McIntosh@usdoj.gov
Phone: 804-819-5400
Fax: 804-819-7417

_____
DANIEL P. MOSTELLER
Trial Attorney
United States Department of Justice
Civil Rights Division
Housing and Civil Enforcement Section
950 Pennsylvania Ave., N.W. – NWB
Washington, D.C. 20530
Email: Daniel.Mosteller@usdoj.gov
Phone: 202-514-4713
Fax: 202-514-1116

**For Defendant SunTrust Mortgage, Inc.:**

ANDREW L. SANDLER
KIRK D. JENSEN
LIANA R. PRIETO

_____
CAITLIN M. KASMAR
Virginia Bar Number 68298
BuckleySandler LLP
1250 24th Street NW, Suite 700
Washington, DC 20037
Email: Andrew.Sandler@buckleysandler.com
Phone: 202-349-8000
Fax: 202-349-8080

## APPENDIX A

### Release

In consideration for the parties' agreement to the terms of the Consent Order entered in

United States v. SunTrust Mortgage, Inc., (E.D. Va.), and the Defendant's payment to me of

$_____, pursuant to the Consent Order, I hereby release and forever discharge all claims,

accruing prior to the entry of the Consent Order, related to the allegations of housing and credit

discrimination in the origination of loans secured by residential real estate at issue in the

litigation referenced above, that I may have against the Defendant, all related entities, parents,

predecessors, successors, subsidiaries, and affiliates, and all of their past and present directors,

officers, agents, managers, supervisors, shareholders, and employees and their heirs, executors,

administrators, successors, or assigns.

Executed this ___ day of _____, ____.

_____
Signature

_____
Print Name

_____
Address

## Notices

3:12-cv-00397-REP United States Of America v. SunTrust Mortgage, Inc.

### U.S. District Court

### Eastern District of Virginia -

## Notice of Electronic Filing

The following transaction was entered by McIntosh, Robert on 7/10/2012 at 3:03 PM EDT and filed on 7/10/2012

**Case Name:**        United States Of America v. SunTrust Mortgage, Inc.
**Case Number:**    3:12-cv-00397-REP
**Filer:**                United States Of America
**Document Number:** 14

**Docket Text:**
NOTICE by United States Of America re [12] Motion Hearing, *"Unopposed Motion for Entry of Revised Consent Order and Brief in Support"* with proposed Consent Order attached *(original paper copy with signatures to be lodged in Clerk's Office)* (Attachments: # (1) Proposed Order)(McIntosh, Robert)

**3:12-cv-00397-REP Notice has been electronically mailed to:**

Andrew L. Sandler    asandler@buckleysandler.com

Caitlin Marie Kasmar    ckasmar@buckleysandler.com

Daniel Paul Mosteller    daniel.mosteller@usdoj.gov

Liana R. Prieto    lprieto@buckleysandler.com

Robert P. McIntosh    Robert.McIntosh@usdoj.gov, USAVAE.RIC.ECF.CIVIL@usdoj.gov

**3:12-cv-00397-REP Notice has been delivered by other means to:**

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1091796605 [Date=7/10/2012] [FileNumber=4053019-0
] [11bbffc00e741fb2d1b20b7e60161202014a9ff4da4ac6f5e04e42c8c149eff1482
93f20aa587280172c7a2f13af692c83b36e7806ed1149219e8976cd0cbafb]]
**Document description:**Proposed Order
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1091796605 [Date=7/10/2012] [FileNumber=4053019-1
] [387d5faa6fe19533bbd4fbdd4f644fb2f382a4d30c8e4c97b8ff2cfb45e6eca9ba6
85796a02704ce37159d02c4e94a92cb4f23bc36ddbb9274ad90b93fa3244c]]